UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:

Justo Reyes,                                                  Chapter 13

                                                             Case No. 16-22556 (SHL)
Debtor.
-------------------------------------------------------X

In re:
                                                             Chapter 13
Karen Jackson,
                                                             Case No. 16-23514 (SHL)
Debtor.
-------------------------------------------------------X

In re:
                                                             Chapter 13
Janet Berger,
                                                             Case No. 17-22921 (SHL)
Debtor.
-------------------------------------------------------X

In re:
                                                             Chapter 13
Anastasia Cretekos,
                                                             Case No. 18-22239 (SHL)
Debtor.
-------------------------------------------------------X

In re:
                                                             Chapter 13
Frank Occhipinti,
                                                             Case No. 18-22690 (SHL)
Debtor.
-------------------------------------------------------X

In re:
                                                             Chapter 13
Richard Graham Watson,
                                                             Case No. 18-22923 (SHL)
Debtor.
-------------------------------------------------------X

In re:
                                                             Chapter 13
Douglas Kramer,
                                                             Case No. 18-22940 (SHL)
Debtor.
-------------------------------------------------------X
-------------------------------------------------------X

In re:

Charmaine J. Brown,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 18-23036 (SHL)

In re:

Janice K. Desmond,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 18-23750 (SHL)

In re:

Suzanne M. Faupel,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 19-22007 (SHL)

In re:

Christopher Rocco Gizzo,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 19-22051 (SHL)

In re:

John Kolkowski,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 19-22172 (SHL)

In re:

Catherine R. Pelle,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 19-22229 (SHL)

In re:

David Daniel Akerib,

Debtor.

-------------------------------------------------------X

Chapter 13

Case No. 19-22276 (SHL)

```
-------------------------------------------------------X
In re:
                                        Chapter 13
Sarah Frankel,
                                        Case No. 19-22281 (SHL)
Debtor.
-------------------------------------------------------X
In re:
                                        Chapter 13
Malka Farkas,
                                        Case No. 19-22520 (SHL)
Debtor.
-------------------------------------------------------X
In re:
                                        Chapter 13
Blossom Joyce Consingh,
                                        Case No. 19-23034 (SHL)
Debtor.
-------------------------------------------------------X
```

## ATTORNEY DECLARATION

NOW HERE COMES, Linda Tirelli, Esq., Debtor's Counsel, or Former Counsel in matters

no longer pending, to each of the above-named Chapter 13 Debtors, or former Debtors, in

response to, and to fulfill the requirements of, the Court's Order to Show Cause, dated June 17,

2021, and hereby does so declare as follows:

1.  It is respectfully submitted that the pending Order to Show Cause fails to identify the

alleged misrepresentation made to the Court, or any party in interest, the case in which the issue

arises or the date of such alleged misrepresentation.   Notwithstanding the foregoing no

misrepresentation was ever knowingly made to the Court by the undersigned or person under her

direction or control at any time.   In the absence of specific reference to the alleged

misrepresentation made, request is made that the Order to Show Cause be vacated by the Court.

2. Notwithstanding the foregoing, in the absence of a clear reference to the alleged

misrepresentation, it is understood by the undersigned that the issue before this Court arises arise

out of my having previously extended myself, without compensation, by offering to retain in

escrow, funds payable by client Debtors in limited matters that involved disputed mortgagees. In these limited matters, the identity of the property mortgagee was either unknown, or of the Debtor challenged the validity of the claimed mortgage as a properly secured lien held by a claimed creditor.

3.   I received no financial benefit from offering to serve in this role the limited times I did so. There was never a fee   I did so for the sole benefit of the client to avoid making payments to a lender that was subject to challenge for reasons that would be addressed and determined before the Court.  In my considerable experience, rectifying and being reimbursed payments made to an improper creditor is an arduous task that serves only to create further difficulty and prejudice to the Debtor and the Chapter 13 process.

4.   Literally years after being put in place, with the knowledge, consent and actual direction of Judge Robert Drain, and continued before Judge Lane (until phased out in 2019) without inquiry or objection, the Office of the Chapter 13 Trustee now takes exception to this prior practice despite longstanding clear knowledge, without complaint.

5.   The subject funds would not have been payable to the Chapter 13 Trustee even if not identified as escrowed funds because they were earmarked in the Schedule J expenses of the Debtor as an allowed expense and held until verification of proper party and amounts owed could be determined and in a number of cases,  would have necessarily been paid to the putative secured creditor as post-petition adequate security payments.

6.   The undersigned understands that the Chapter 13 Trustee claims that the collective funds in issue well exceed $1,000,000.  There is no veracity to this claim that is grossly overstated many times over.

7.  Upon information and belief, all of the above captioned cases with the possible exception
of one were initially brought before the Honorable Judge Robert D. Drain until re-assigned before
the Honorable Sean H. Lane in or about May 2019. The lone exception is the case of In re Blossom
Joyce Consign, Case Number 19-23034(shl) which at all times relevant is assigned to the
Honorable Sean H. Lane.

8.  For the Court's reference, attached hereto as **Exhibit A**, incorporated herein by reference,
is a chart I have created identifying each case by name of the relevant Debtor and specifically
responding to the issues of: (i) whether any funds were remitted to me subsequent to issuance of
the Chapter 13 Plan and thereafter maintained by me, in escrow, at any time during the pending
bankruptcy case; (ii) the total sum paid to the trustee; (iii) the funds, if any, paid to secured
creditors; and (iv) whether funds remain in my escrow as of this date.

9.  At the time of filing, Chapter 13 cases require submission of a plan prior to the deadline
for secured creditors to come forth and identify a mortgage servicer, amount owed, documents to
prove standing and payment address.

10. Plan language included in some of the earlier above captioned cases involved the Debtor
either setting aside funds in his/her own or depositing money in an attorney escrow account[1].

11. The undersigned drafted the plans for the individual Debtors.

12. Each of the above Debtors read the plan before signing in the presence of the undersigned
and understood their obligation under the plan, including remitting funds to the undersigned when
the plan required that be done.

---

[1] The undersigned ended the practice for new matters of including language in chapter 13 plans to set aside funds
in 2019, TWO(2) years prior to the instant Order to Show Cause. The above captioned cases are carry-over cases
from a prior court and, in many cases, a prior chapter 13 trustee. Not all plans included language depositing
money into escrow and in the case of Blossom Consign, no language in the plan or amended plan had any funds set
aside. Instead, Ms. Consign was to pay the secured creditor directly.

13. At the time of plan submission, to the extent it provided for disputed funds to be remitted to the undersigned, the clear intention and expectation by the undersigned was that the Debtor would comply with the plan provision to do so. To the extent a Debtor (client) failed to honor the relevant plan provision, that election was made solely by the Debtor after the plan was submitted to the Court.

14. At no time did the undersigned nor any attorney employed by the undersigned misrepresent an amount being held in escrow to the Court. Ethical considerations precluded the undersigned from volunteering the fact that a particular Debtor/ Client had not made certain payments to the undersigned. As counsel to any Debtor, the undersigned cannot act in a manner contrary to the client's interest.

15. However, in any instance in which the Court or any interested party made inquiry, full and correct information was immediately provided.

16. In furtherance of this fact, the Court is respectfully referred to the appearance held on September 9, 2020, in the matter of Janice K. Desmond, 18-23750, the transcript of which is annexed hereto as **Exhibit B**. The undersigned appeared before Judge Lane and Krista Preuss, Esq. was present. As part of this matter in which the Debtor was permitted to sell her primary residence and realize $146,000 in exempt funds, a secured creditor who held a mortgage on the Debtor's secondary property moved for relief from the automatic stay. In response to the lender's application, the undersigned was transparent and overt as to why no opposition to the secured creditor's application would be raised:

> 3 MS. TIRELLI: Yes, Your Honor. Linda Tirelli still
> 4 for the debtor.
> 5 I did speak with the debtor, and, you know, like all
> 6 my clients, I want them to set the money aside for, you know,
> 7 for the post-petition payments. In this particular case, it
> 8 was not done, so I don't have a defense for the nonpayment of

> 9 post-petitions, Your Honor, (indiscernible).
> 10 THE COURT: All right. So that motion is granted.
> 11 So with those, would it make sense to set this for
> 12 November 18th for confirmation?
> 13 MS. TIRELLI: I would think so, Your Honor.
> 14 S. PREUSS: Thank you, Your Honor. Yes.

17. The undersigned did not secrete the fact that the Debtor failed to satisfy the Plan requirements to set aside funds. To the contrary, in response to the secured creditor's application, full and accurate information was voluntarily presented to the Court.

18. In response to the undersigned's providing, this Court granted the secured creditor's motion. There was no inquiry concerning the Debtor's failure to satisfy the Plan requirements. No suggestion was raised that the undersigned misrepresented anything to the Court concerning this issue. Instead, Ms. Preuss, fully aware of the fact that the Debtor's Plan provided for funds to be set aside but were not, made no suggestion that the undersigned acted improperly in any respect.

19. At no time during this appearance, from two years ago did either the Court or Ms. Preuss question or raise the fact that the undersigned did not volunteer the fact that the Debtor, my client, did not honor the relevant Plan provision. The undersigned has never strayed from acting in the same manner in other cases concerning this issue. No Order was ever entered requiring the undersigned to affirmatively act contrary to client interests by raising, unsolicited, the client's election to not fund the subject escrow. No agreement was ever entered imposing upon the undersigned the affirmative duty to act contrary to client interests by raising, unsolicited, this information. Instead, any time inquiry was made by the Court or any party in interest, immediate, comprehensive and accurate information was provided.

20. In re Desmond followed an earlier appearance in the matter of Akerib, 19-22276, held on August 28, 2019. A copy of this transcript is annexed hereto as **Exhibit C**.[2]

21. On August 28, 2019, Mr. Jose referenced the "understanding" concerning the practice of holding monies in escrow for pos-petition payments (Tr. Page 5, Lines 15-18). In response, Judge Lane held:

> Oh, I'm – yeah. No, we shouldn't do that unless there's actually been something filed that calls into question the validity of the actual noteholder. And so if there's an adversary, there's a claim objection, but as a general practice, no, we – that should – that money should come out of escrow. (Tr. Page 5, Lines 19-24).

22. In response to the undersigned raising the fact that there were numerous issues concerning the secured lender's status that warranted escrow, the Court responded, "...I'm not casting any aspersions." (Tr. page 6, Lines 5-6).

23. At the present time, given the pending Order to Show Cause, aspersions have most certainly been caste that question the professional integrity and ethics of the undersigned despite the Court being aware of, and condoning, counsel's practice for the last several years.

24. One month after the appearance in Akerib, the issue again came up on September 25, 2019 in the matter of Frankel, 19-22281. A copy of the transcript of proceedings is annexed hereto as **Exhibit D**.

25. In Frankel, the Court again acknowledged to practice of providing for escrow in certain Chapter 13 matters involving post-petition payments when it held:

> I think the wrinkle here is that the money was in escrow because it used to be a provision of a plan. And we've had the conversation, as I said, if there's an adversary pending or a claim objection pending,

---

[2] References to "Mr. Fay" in the transcript are believed to be Mr. Dennis Jose, counsel to the Chapter 13 trustee, and are made as Mr. Jose herein.

> escrow is one thing, but otherwise it should be paid
> to the creditor consistent with the requirement to
> make post-petition payments. (Tr. Page 5, Lines 3-
> 8).

26. The undersigned acting in conformity with the "conversation" referenced by the Court and

previously utilized the escrow arrangement in accordance therewith.    The practice was

discontinued and only remained in place for those earlier matters that provided for it in their

respective Plans.

27. This issue again came up before the Court on February 17, 2021 in the matter of

Kolkowski, 19-22172.  A copy of the transcript is annexed hereto as **Exhibit E**.

28. Dennis Jose, Esq., from the Chapter 13 Trustee's Office, complained that his office had

"been asking repeatedly as to what the status of any of those funds are", referencing $2,707.91 of

post-petition payments.  (Tr. Page 7, Lines 16-17).

29. In response, Mr. Jose was interrupted by the Court:

> Let me interrupt you.  I have notes from December
> [2020] saying – the status report [from the
> undersigned] says that escrow of adequate protection
> payments were turned over.  Trustee was asking
> about that, and then Nationstar confirmed that they
> had received those payments.

30. The referenced status report was provided to the Chapter 13 Trustee.  All information was

timely provided.  Yet, the Trustee's counsel suggested, on the record, that the undersigned failed

to provide timely information and funds.  The Court made clear that any such suggestion was

without merit.

31. The undersigned has requested copies of every available transcript in all of the above cases

from the date of filing through the date of the Order to Show Cause, to review for any statement

that might be characterized as a potential misrepresentation to the court.

32. In furtherance of the previously referenced exhibits, copies of all transcripts are provided together with case summaries attached hereto.

33. As part of the pending Order to Show Cause, the Court has ordered the undersigned to prepare a declaration which includes a statement regarding "…the extent that the funds actually held in escrow do not match the amount that should have been in escrow based on representations made to the Court, an explanation as to why such a circumstance does not constitute sanctionable conduct;"

34. No representations were ever made to the Court except for true and accurate representations as to sums held, or that no funds were held. Without knowing which "representations made to the Court" are being referenced, the undersigned is unable to intelligently respond other than to make clear that at no time has the undersigned ever represented to the Court that funds were held by her office, if such representation were not entirely accurate in all respects.

35. The undersigned does not fund the Debtors' plans.

36. The Debtors have the obligation of funding their plan and adhering to all terms.

37. The natural consequence in those matters where funds were not in fact set aside by the Debtor as represented in their respective plan was that a secured creditor could seek and be afforded relief from the stay. Any inquiry ever raised of the undersigned concerning a Debtor's compliance with his or her plan was only ever responded to with an accurate response.

38. No motion for turnover of funds has been filed by the Trustee in any of the above cases.

39. No objection to the plan provision that provided for the undersigned to receive and hold funds has ever been filed by the Chapter 13 trustee.

WHEREFORE, the undersigned requests that this order to show cause be dismissed and

that no sanction be imposed.

DATED: September 20, 2021                    By:   /S/ LINDA M TIRELLI
                                             Linda M Tirelli, Esq.
                                             Debtors' Counsel
                                             50 Main Street, Suite 1265
                                             White Plains, NY 10606
                                             Phone: (914)732-3222

# TIRELLI DECLARATION

# EXHIBIT "A"

| Case | Status And Relevant Facts | Money Paid to Attorney Escrow | Money Turned Over To Creditor or Trustee From Attorney Escrow Or Paid Directly By Debtor | Money Currently Held in Attorney Escrow | Chapter 13 Plan Language |
|---|---|---|---|---|---|
| Justo Reyes 16-22556 | Case Dismissed (See Attached Case Summary) | $0.00 | **$72,917.63\*** **Paid by the Debtor as adequate protection directly to Wells Fargo Bank as per July 2019 agreement, post Stay Relief Order. (See Case Summary )** \*As confirmed 09/10/2021 with counsel for servicer, Casey Howard, Esq. | $0.00 | Date Plan Filed: May 5, 2016 Ecf Dkt No: 13 Plan Section D Category 2(b) reads as follows: (b) Post-Petition Payments. Debtor shall pay the following Post-Petition Payments directly to the Secured Creditor listed below during the pendency of the Plan: (Disputed Creditor) America's Servicing Company PO Box 14472 Des Moines, IA 50306 **Property Address**: 90 Lakeview Ave. Hartsdale, NY 10530 **Loan Number**: XXXX6168 **Payment Timing**: Payment Amount $3300.00 to be held aside monthly pending judicial determination of real party in interest and amount of debt owed, if any **\*No requirement to deposit any money into lawyer's trust account. Court ordered loss mitigation program was terminated 10/25/2018 Secure Creditor GRANTED Stay Relief via court order of the Honorable Judge Robert D. Drain on 03/18/2019 due (in part) to lack of adequate protection paid by Debtor, no opposition filed by the undersigned. (See Case Transcripts attached.)** |
| Karen Jackson 16-23514 | Active case due to mature 11/2/2021. Plan providing 100% payout to priority and | $0.00 | **$66,406.64** **Approximate amount paid by Debtor directly to mortgage servicer Selene Financeing LP from January 2020 through** | $0.00 | 1.     Initial Chapter 13 Plan Date Plan Filed: November 3, 2016 Ecf Dkt No: 13 Plan Section D Category 2(b) reads as follows: (b) Post-Petition Payments. |

1

| | | | | |
|---|---|---|---|---|
| | unsecured creditors filed on 08/30/2021. (See case summary) | | September 10, 2021. Debtor started trial loan mod agreement on September 2021, reflected in second amended chapter 13 plan filed on August 30, 2021. | | Debtor shall pay the following Post-Petition Payments directly to the Secured Creditor listed below during the pendency of the Plan: **Secured Creditor & Property Description** DISPUTED CREDITOR Selene Finance **Property Description:** 29 Manitou Trail White Plains, NY 10603 **Payment Amount:** Respective Post Petition Payments to each purported lien holder are to be held aside in escrow pending judicial determination of the identity of the real party in interest and amount owed (if any) Per Contract **Payment Timing:** monthly 2. **First Amended Plan** Date of 1st Amended Plan: July 9, 2021 Date 1st Amended Plan Filed : July 14, 2021 (ECF Dkt No. 108) First Amended Plan Section 3.2(c) Adequate Protection reads as follows: *"...adequate protection of a secured Creditor's interest in property shall be provided as follows: Selene Finance as servicer for Wilmington Savings Fund Society FSB d/b/a Christiana Trust(disputed) re: 29 Manitou Trail, White Plains, NY 10603, is being paid $2209.84, monthly,* |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | *pending outcome of litigation (see ECF Dkt 12, 13 & 14)."*<br><br>**3.  Second Amended Plan**<br>Date of 2nd  Amended Plan: August 26, 2021<br>Date 2nd Amended Plan Filed: August 30, 2021<br>(ECF Dkt No. 128)<br>Second Amended Plan Section 3.2(a) Post Petition Payments<br>reads as follows:<br>*Selene Finance LP re: property located at 29 Manitou Trail,*<br>*White Plains, NY 10603,*<br>*Amount of Payment: $3056.08*<br>*Payment Timing: monthly*<br>*Payment address: per contract* |
| Janet Berger<br>17-22921 | **Dismissed**<br>Via Order entered June 7, 2021 (ECF Dkt No 62) for falling 13 months behind on Ch 13 plan payments to the trustee.<br>(see case summary) | $28,800.00<br>Debtor stopped setting aside mortgage payments and stopped making trustee payments in 2020 believed to be due to Covid hardships experienced by | $0.00 | $28,800.00 | **1.    Initial Chapter 13 Plan[1]**<br>Date Plan Filed: 09/01/2017<br>Ecf Dkt No: 21 and 22 (appear to be duplicative filings<br>Plan Section D Category 2(b) reads as follows:<br>(b) Post-Petition Payments.<br>Debtor shall pay the following Post-Petition Payments directly to the Secured Creditor listed below during the pendency of the Plan:<br>**Secured Creditor & Property Description**<br>**Secured Creditor:**<br>MGC Mortgage Inc.[2] |

---

[1] Debtor filed her case pro se on 06/09/2017 with no plan filed prior to undersigned's appearance. Undersigned has no knowledge as to who advised the debtor to file in June 2017 or what the Debtor understood (pre-petition) about plan payments and adequate protection.

[2] No claim was filed by "MGC Mortgage Inc." A timely claim with questionable standing claim as pointed out by Hon Robert D Drain was filed on September 20, 2017 by LPP Mortgage. See case summary and case transcripts.

3

| | | the Debtor's family (see case summary) | | | 1 Corporate Drive Suite 360 Lake Zurich IL 60047 (DISPUTED) Single family house located at: 14 Wallenberg Circle, Monsey, NY **Payment Amount:** $3200.00 To be Held aside Pending verification of amount owed (if any) and real party in interest **Payment Timing:** Monthly <br><br> 2. <u>**Amended Ch 13 Plan**</u> <br> Date of 1st Amended Plan: December 28, 2018 Date 1st Amended Plan Filed : January 3, 2019 (ECF Dkt No. 43) Second Amended Plan Section 3.2(a) Post Petition Payments reads as follows: *(Disputed) LPP Mortgage see varying provision* *Amount of Payment: $1500.00* *Payment Timing: monthly* *Payment address: see varying provision*[3] |
|---|---|---|---|---|---|

---

[3] Upon reviewing the ECF record, it seems the varying provision was inadvertently never filed with the court and is therefore not part of the court's record. The executed plan includes a varying provision as follows:

**8.6 Additional Non-Standard Provisions**
RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate Protrection Sec. 3.2 (c)
Post petition mortgage payments alleged by disputed creditor LPP Mortgage Inc.  in the amount of $1500.00 monthly to be held in escrow by Debtor pending judicial determination as to nature and extent of lien ( if any) and identity of real party in interest.  Debtor disputs the proof of claim filed by alleged creditor.  Thre are 4 additional lien hilders which may or may not have their liens avoided pending the outcome of the known dispute.  The funds held in escrow will be identified as adequate protection payment in a separate stipulation between debtor and said verified creditor which is determoned to be in first position, once identified and verified, and said agreement will be filed with the court.  In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the identified first lien holder, the same shall be turned over as additional disposible income and applied as additional disposable income to further fund the Debtor's plan to the extent necessary.

| | | | | | |
|---|---|---|---|---|---|
| Anastasia "Stacey" Cretekos 18-22239 | Dismissed On 9/3/2021 Per Debtor's Notice of Voluntary Dismissal (see case summary) | $28,000.00 | $0.00 Prior to filing of Notice of Voluntary Dismissal, the undersigned notes that the trustee was holding $29,000 but has only 1 claim to pay for $700. The plan was far over funded. Due to returned funds in case of In re Watson ( 18-22923) a case also over-funded, undersigned did not turn over funds to the trustee, and debtor filed a voluntary dismissal as directed by her client. It is worth noting, the success of the case incudes Debtor surrendering her property with waiver of any claim deficiency. Joint  agreement approved by the court, eliminated the Debtor's largest (and most problematic) creditor. (see case summary) | $28,000.00 | 1.       Initial Chapter 13 Plan Date Plan Filed: 02/23/2018 Ecf Dkt No: 8 Plan Section 3.2(a)Post Petition Payments reads as follows: **Secured Creditor & Property Description** (Disputed) Suntrust Mortgage Prop located at 1 Edelweiss Lane, Congers, NY, **Payment Amount: $4000.00 Payment Timing: Monthly Address Where Post Petition Payments Will be Sent:** c/o Tirelli & Wallshein Trust 50 Main Street, Ste. 105, White Plains, NY 10606 **2.   First Amended Chapter 13 Plan Date Plan Filed: 07/14/2021 Date of Plan: 07/12/2021 Ecf Dkt No: 84 Plan Section 3.2 Maintenance of payments and cure of default if any:** None.[4] |
| Frank Occhipinti 18-22923 | Voluntary Dismissal Motion | $0.00 | $0.00 | $0.00 | 1.       **Initial Chapter 13 Plan** Date Plan Filed: 05/24/2018 Ecf Dkt No: 11 |

---

[4] Debtor surrendered her property (primary residence) in full satisfaction as per settlement agreement so-ordered by this court and as described in Ch 13 Amended Plan at Section 8.4 with copy of stipulated order attached and served with Plan as Exhibit A.

(see case summary)

| | | | | | |
|---|---|---|---|---|---|
| | filed September 2, 2021 Per 11 USC 1307(b) (see case summary) | | | | Plan Section 3.2(a)Post Petition Payments reads as follows: **Secured Creditor & Property Description** PNC Bank (DISPUTED) **Payment Amount: $4300.00** **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** c/o Tirelli & Wallshein IOLA Acct pending judicial determination of validity of lien and real party in interest<br><br>2.     First Amended Chapter 13 Plan Date Plan Filed: 07/14/2021 Date of Plan: 07/12/2021 Ecf Dkt No: 54 **Secured Creditor & Property Description** PNC Bank (DISPUTED)is subject to outcome of Adversary Proceeding #18-08269 RE: 149 Webber Ave., Tarrytown, NY 10591 **Payment Amount: $4300.00** **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** Per POC 6 |
| Richard Watson 18-22923 | Active Case is Ready to be confirmed paying out 100% to creditors | $8511.00 | $8511.00 Sent to Ch 13 Trustee from undersigned counsel deemed disposable income prior to confirmation, balance held in escrow was turned over to the | $8511.00 | 1.   **Initial Chapter 13 Plan** Date Plan Filed: 06/24/2018 Ecf Dkt No: 9 Plan Section 3.2(a)Post Petition Payments reads as follows: |

| | | | | | |
|---|---|---|---|---|---|
| | | | Chapter 13 Trustee, funds were rejected by the trustee, as she was already holding $29,000 and the amount of debt remaining in the case is only $1806.13.  Plus pending fee application seeking $13,163.19 .  Plan is far and above over-funded.<br>(see case summary) | | **Secured Creditor &Property Description:**<br>(Disputed) CitiMortgage RE 401 Homestead Ave.,<br>Mt Vernon, NY<br>**Payment Amount:**$2127.83<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>To be held IN ESCROW wit Tirelli & Wallshein, LLC<br><br>2.    <u>**First Amended Plan**</u><br>Date Plan Filed: 01/22/2020<br>Date of Plan: 01/17/2020<br>Ecf Dkt No: 63<br>**Plan Section 3.2 Maintenance of payments and cure of default if any:**<br>None.[5]<br>3.    <u>**Second Amended Plan**</u><br>Date Plan Filed: 11/09/2020<br>Date of Plan: 11/04/2020<br>Ecf Dkt No: 80<br>Plan Section 3.2 Maintenance of payments and cure of default if any:<br>None.[6] |
| Douglas Kramer 18-22940 | Active | $0.00 | $84,441.82 | $0.00 | 1.    <u>**Initial Chapter 13 Plan**</u><br>Date Plan Filed: 07/02/2018 |

[5] Debtor sold his primary residence per 11 USC 362 to the claimant via credit bid. No further payments were required to the creditor.

[6] Plan amended to include copy of final order approving the sale of Debtor's home entered 07/09/2020 attached to the plan as Exhibit A.  Plan payments to the trustee were reduced as it was again determined the trustee held sufficient fund to administer  100% payout to al creditors.

| | (see case summary) | | Approximate amount paid by Debtor directly to mortgage servicer SN Servicing Corp from August 2020 through September 2021. Debtor started trial loan mod agreement on August 1, 2020, reflected in second amended chapter 13 plan filed on August 30, 2021. Plan was amended prior to the pending OSC. Please note plan is entirely funded by Debtors exempt social security and disability funds. | | **Ecf Dkt No**: 10 <br> Plan Section 3.2(a)Post Petition Payments reads as follows: <br> **Secured Creditor &Property Description:** (Disputed) Selene Finance RE property location: 44 E. Hill Rd. Cortlandt Manor, NY 10567 <br> **Payment Amount:**$5900.00 <br> **Payment Timing:** Monthly <br> **Address Where Post Petition Payments Will be Sent:** <br> See varying Provision <br><br> **8.6 Additional Non-Standard Provisions** : <br> 3.2 Debtor's postpetition mortgage payments to be held IN ESCROW with Tirelli & Wallshein, LLP IOLA account pending timely filed claim and verification of nature and extent of lien, amount owed and identity of real party in interest. <br> 3.2(c)_ Adequate Protection - Upon timely filed claim, undersigned Debtor's counsel and counsel for secured mortgage lien creditor shall draft and stipulate to adequate protection attaching the funds held in escrow with Tirelli & Wallshein LLP as described herein above. <br><br> 2.        **First Amended Plan** <br> Date Plan Filed: 11/12/2019 |

| | | | | | **Date of Plan:** 11/11/2019 **Ecf Dkt No:** 30 **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** (Disputed) Selene Finance RE property location: 44 E. Hill Rd. Cortlandt Manor, NY 10567 **Payment Amount:**$5900.00 **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** See varying Provision **8.6 Additional Non-Standard Provisions** : Debtor shall negotiate a short payoff of the mortgage on his primary residence via the court's loss mitigation program to be paid via funds from his wife as per affidavit of contribution dated November 11, 2019 3.        <u>Second Amended Plan</u> **Date Plan Filed:**07/16/2021 **Date of Plan:** 07/15/2021 **Ecf Dkt No:** 74 **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** JP Morgan Chase Bank, NA via SN Servicing Corp RE property location: 44 E. Hill Rd. Cortlandt Manor, NY 10567 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | **Payment Amount:**$4408.94<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>Per loan modification agreement attached hereto |
| Charmain Brown<br>18-23036[7] | Dismissed 07/14/2021<br>Per motion filed by Ch 13 trustee for not making plan payments to the trustee.<br>. | $0.00 | $0.00 | $0.00 | 1.        **Initial Chapter 13 Plan**<br>**Date Plan Filed:** 07/03/2018<br>**Ecf Dkt No:** 6<br>Plan Section 3.2(a)Post Petition Payments reads as follows:<br>**Secured Creditor &Property Description:**<br>Caliber Home Loans<br>758 E.224T Street<br>Bronx, NY 10466<br>**Payment Amount:**$2600.00*<br>**Payment Timing:** Monthly ALL CURRENT PAYMENTS TO BE PAID<br>DIRECTLY TO CREDITOR OUTSIDE OF THE PLAN[8]<br>**Address Where Post Petition Payments Will be Sent:**<br>PO Box 650856, Dallas, TX<br>2.        **First Amended Plan**<br>**Date Plan Filed:** 09/07/2018<br>**Date of Plan:** 09/07/2018<br>**Ecf Dkt No:** 16 |

[7] This case was filed by Debtor's bankruptcy counsel, Attorney David Babel.  Undersigned acted in capacity limited to litigation over disputed claims and did not file or prepare chapter 13 plan or amended plans.

[8] Initial plan required payments to be made to creditor.  As of the date and time the undersigned appeared in limited capacity as litigation counsel, based upon information and belief, no post-petition payments had been made to the creditor.

| | | | | | **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** US Bank Trust as Trustee for LSF9 Master c/o Caliber Home Loans **Payment Amount:$2600.00\*** **Payment Timing:** Monthly ALL CURRENT PAYMENTS TO BE PAID DIRECTLY TO CREDITOR OUTSIDE OF THE PLAN **Address Where Post Petition Payments Will be Sent:** PO Box 650856, Dallas, TX <br><br>3.       **Second Amended Plan** **Date Plan Filed:** 10/25/2018 **Date of Plan:** 10/25/2018 **Ecf Dkt No:** 20 **Plan Section 3.2 Maintenance of payments and cure of default if any:**   A)  **Secured Creditor &Property Description:** US Bank Trust as Trustee for LSF9 Master c/o Caliber Home Loans (DISPUTED **Payment Amount:$2600.00\*** **Address Where Post Petition Payments Will be Sent:** See varying Provision   B)  **Secured Creditor &Property Description:** |
| --- | --- | --- | --- | --- | --- |

| | | | | | Value Add Mortgage Fund Main Street Asset Solutions (DISPUTED) **Payment Amount:**$884.30 **Address Where Post Petition Payments Will be Sent:** See varying Provision<br><br>**8.6 Additional Non-Standard Provisions** RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate Protection Sec. 3.2 (c)Post-petition mortgage payments alleged by disputed creditors in the respective amounts of $2297.77 and $884.30 monthly to be held in escrow with Tirelli & Wallshein, LLP pending judicial determination as to nature and extent of lien ( if any) and identity of real party in interest. Said funds held in escrow will be identified as adequate protection payment in a separate stipulation between Debtor and said verified creditors to be filed with the court, pending the outcome of further judicial determination. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditors, the same shall be turned over to the Chapter 13 Trustee as additional disposable |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | income to further fund the Debtor's plan. |
| Janice Desmond 18-23750 | Active / Confirmable Debtor proposes a 100% plan. At the time of filing the Debtor owned 2 properties. Debtor sold one property per 11USC363 and the secured creditor was paid in full. The second property was subject to stay relief motion granted by this court. There are no secured creditors at this time. (See Case Summary) | $0.00 | 1) $199,028.35 paid at closing to Citizen's Bank ( see ECF Dkt No 56 "closing statement") filed on June 9, 2021<br>2) $0.00 paid to HSBC; stay relief granted on record at hearing on 09/09/2020 - no opposition filed; Order entered SIX(6) months later on 03/19/2021 (see case summary with attached transcripts) | $0.00 | 1.    **Initial Chapter 13 Plan**<br>**Date Plan Filed**12/12/2018<br>**Ecf Dkt No: 12**<br>**Plan Section 3.2 Maintenance of payments and cure of default if any:**<br>A)    **Secured Creditor &Property Description:**<br>(DISPUTED) Ocwen Loan Servicing re: 50 Robertson Rd.,<br>Pearl River, NY 10965<br>**Payment Amount:**$2000.00<br>**Address Where Post Petition Payments Will be Sent:**<br>See varying Provision<br>B)    **Secured Creditor &Property Description:**<br>(DISPUTED) Citizens Bank re: 26 Poplar Street, Pearl River, NY 10954<br>**Payment Amount:**$1600.00<br>**Address Where Post Petition Payments Will be Sent:**<br>See varying Provision<br><br>**Sec. 8.6 Varying Provisions / In re Janice Desmond 18-23750(rdd)**<br>**RE: Post Petition Mortgage Payments Sec. 3.2(a) and**<br>**Adequate  Protection**<br>(a) The first mortgage on Debtor's property |

13

| | | | | | located at 50 Robertson Drive., Pearl River, NY 10965 is asserted by Ocwen Loan Services and is disputed as to both the amount and the identity of the real party in interest. Post-petition monthly payments in the amount of $2000.00 shall be held in escrow with the Debtor's attorney, pending determination as to the identity of the real party in interest and amount owed (if any) at which time the funds will be transferred to the verified creditor as adequate protection.  In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, said funds shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan.  The Debtor has identified the potential mortgage claim as "disputed" in her schedules. (b) The first mortgage on Debtor's property located at 26 Poplar Street, Nanuet, NY 10954 is asserted by Citizen's Bank and is disputed as to both the amount and the identity of the real party in interest.  Post petition monthly payments in the amount of |
|---|---|---|---|---|---|

| | | | | | $1600.00 shall be held in escrow with the Debtor's attorney, pending determination as to the identity of the real party in interest and amount owed (if any) at which time the funds will be transferred to the verified creditor as adequate protection. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, said funds shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan. The Debtor has identified the potential mortgage claim as "disputed" in her schedules. 2. **First Amended Plan** **Date Plan Filed:** 08/31/2021 **Date of Plan:** 07/19/2021 **Ecf Dkt No:** 85 **Plan Section 3.2 Maintenance of payments and cure of default if any:** None.[9] |
|---|---|---|---|---|---|

---

[9] Debtor attached copies of 2 orders as exhibits to her Ch 13 plan. The court order approving the sale of 26 Poplar Street, Pearl River, NY and the court order granting stay relief as to 50 Robertson Rd., Nanuet, NY. As stated in the varying provision, the Debtor presents a plan paying 100% to all unsecured and priority creditors.

| | | | | | |
|---|---|---|---|---|---|
| Suzanne Faupel 19-22007 | Dismissed On June 24, 2021, By Court order granting Trustee Motion to Dismiss based on non feasibility  (See case summary) | $0.00 | $0.00 | $0.00 | **1.   Initial Ch 13  Plan** **Date Plan Filed:** 01/18/2019 **Date of Plan:** 01/18/2019 **Ecf Dkt No:** 11 **Plan Section 3.2 Maintenance of payments and cure of default** if any: **Secured Creditor &Property Description:** (Disputed)Flagstar Bank re: 1117 North Street, White Plains, NY **Payment Amount:**$3500.00 **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** See varying Provision **8.6 Additional Non-Standard Provisions** : RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate  Protection Sec. 3.2 (c) Post petition mortgage payments alleged by disputed creditor Flagstar Bank in the amount of $3500.00 monthly to be held in escrow with Tirelli Law Group LLC pending judicial determination as to nature and extent of lien ( if any) and identity of real party in interest. Upon the filing of a timely claim by alleged first mortgage creditor, said funds held in escrow will be identified as adequate protection payment in a separate |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | stipulation between debtor and said verified creditor to be filed with the court, pending the outcome of further judicial determination. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, the same shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan. |
| Christopher Gizzo 19-22051 | Active / Confirmable 100% Plan | $0.00 | $900,000.00 to be turned over the Debtor to the secured creditor as part of a short payoff settlement agreement which also waives all deficiencies as negotiated by the undersigned, accepted by the secured creditor, subject to court's final approval . | $0.00 | 1.     **Initial Ch 13  Plan** **Date Plan Filed: 01/23/2019** **Date of Plan: 01/23/2019** **Ecf Dkt No: 9** **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** (Disputed) Bank of NY Mellon Re: 2 Stratton Rd., New Rochelle, NY **Payment Amount:$4500.00** **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** See varying Provision **8.6 Additional Non-Standard Provisions** 1) RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate Protection (a) The first mortgage on Debtor's property located at |

| | | | | | 2 Stratton Rd., New Rochelle, NY is claimed by Bank of New York Mellon and is disputed as to both the amount and the identity of the real party in interest. Post-petition monthly payments in the amount of $4500.00 shall be held in escrow with the Debtor's attorney, pending determination as to the identity of the real party in interest and amount owed (if any) at which time the funds will be transferred to the verified creditor as adequate protection. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, said funds shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan. The Debtor has identified the potential mortgage claim as "disputed" in his schedules. <br><br> 2.       **First Amended Ch 13  Plan** <br> **Date Plan Filed:** 07/14/2021 <br> **Date of Plan:** 07/09/2021 <br> **Ecf Dkt No:** 75 <br> **Plan Section 3.2 Maintenance of payments and cure of default** |
|---|---|---|---|---|---|

18

| | | | | | |
|---|---|---|---|---|---|
| | | | | | if any:<br>**Secured Creditor &Property Description:**<br>(Disputed) The Bank Of New York Mellon Fka The Bank Of<br>New York, As Trustee For The Certificate Holders Of The CWMBS,<br>Inc., CHL Mortgage Pass-Through Certificates, Series 07-00004<br>Re: 2 Stratton Rd., New Rochelle, NY<br>**Payment Amount:**$4500.00<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>Per POC 4 |
| John Kolkowski<br>19-22172 | Dismissed Via Order granting Voluntary Dismissal 06/29/2021 | $48,742.38 | $48,742.38<br>paid over to secured creditor on 09/02/2020 to the mortgage creditor, memorialized on ECF DKT No 29 filed 09/03/2020 (see case summary, transcripts attached)<br>Debtor, based upon information and belief, continued to pay secured creditor $2707.91 per month until his case was dismissed. | $0.00 | 1.    **Initial Ch 13  Plan**<br>**Date Plan Filed:** 02/19/2019<br>**Date of Plan:** 02/19/2019<br>**Ecf Dkt No:** 10<br>**Plan Section 3.2 Maintenance of payments and cure of default if any:**<br>**Secured Creditor &Property Description:**<br>Seterus for FNMA (Disputed)<br>**Payment Amount:**$4500.00<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>See varying Provision<br>**8.6 Additional Non-Standard Provisions**<br>The first mortgage on Debtor's property located at 39<br>Dunwoodie Street, Yonkers, NY 10704 is claimed by Seterus as |

| | | | | | Servicer for FNMA and is disputed as to both the amount and the identity of the real party in interest. Post-petition monthly payments in the amount of $2707.91 shall be held in escrow with the Debtor's attorney, pending determination as to the identity of the real party in interest and amount owed (if any). Debtor alleges the disputed creditor seeks to collect a debt upon which payments were tendered and waived. To the extent the sums owed were waived and any future attempt to pay was futile, the Debtor believes he is owed a credit. Upon determination as to amount owed and identity of real party in interest, the funds held in escrow will be transferred to the verified creditor as post petition adequate protection. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, said funds shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan. The Debtor has identified the potential mortgage claim as "disputed" in his |

| | | | | | schedules. |
|---|---|---|---|---|---|
| Catherine Pelle 19-22229 | Active Confirmable Plan | $5400.00 | $5400.00 was paid to Krista Preuss, ch 13 Trustee on April 27, 2021. Secured creditor was paid approximately $34,351.35 directly from the Debtor.<br><br>(See case summary) Based upon information and belief, Debtor Paid creditor on 1st trial loan Modification payments of $2798.15 03/1/20-05/1/20, (See 1st Amd Plan Dkt 36.) Due to Covid, the trial loan mod was re-issued and the Debtor (a healthcare worker during the pandemic) and got a further payment reduction and completed a new trial loan mod with payments of $2595.69 due on 12/01/20, 01/01/21 and 02/01/2021.  Debtor continues to pay the creditor directly. | $0.00 | 1.      **Initial Ch 13  Plan** **Date Plan Filed:** 02/23/2019 **Date of Plan:** 02/23/2019 **Ecf Dkt No:** 7 **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** (Disputed)Ditech re 26 Buena Vista Ave., Hillcrest, NY 10977 **Payment Amount:**$2700.00 **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** See varying Provision **8.6 Additional Non-Standard Provisions** RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate Protection Sec. 3.2 (c) Post petition mortgage payments alleged by disputed creditor Ditech  in the amount of $2700.00 monthly to be held in escrow with Tirelli Law Group LLC pending judicial determination as to nature and extent of lien ( if any) and identity of real party in interest.  Upon the filing of a timely claim by alleged first mortgage creditor, said funds held in escrow will be identified as adequate protection payment in a separate |

stipulation between debtor and said
verified creditor to be filed
with the court,  pending the outcome of
further judicial
determination.  In the event the escrowed
funds are not claimed
as adequate protection or otherwise paid
to the secured creditor
the same shall be turned over to the Ch 13
Trustee and applied
as additional disposable income to further
fund the Debtor's plan.

2.        **First Amended Ch 13  Plan**
**Date Plan Filed:** 03/02/2020
**Date of Plan:** 02/28/2020
**Ecf Dkt No:** 36
**Plan Section 3.2 Maintenance of
payments and cure of default
if any:**
**Secured Creditor &Property Description:**
 Shellpoint Mortgage re 26 Buena Vista
Ave., Hillcrest, NY 10977
**Payment Amount:**$2798.00
**Payment Timing:** Monthly
**Address Where Post Petition Payments
Will be Sent:**
Per contract

3.        **Second Amended Ch 13  Plan**
**Date Plan Filed:** 02/24/2021
**Date of Plan:** 02/22/2021
**Ecf Dkt No:** 48

| | | | | | |
|---|---|---|---|---|---|
| | | | | | **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** Shellpoint Mortgage re 26 Buena Vista Ave., Hillcrest, NY 10977 **Payment Amount:**$2595.69 **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** PO Box 740059, Cincinnati, OH 45274-0039 |
| David & Vivian Akerib 19-22276 | Active Confirmable Plan | $7200.00 | $22,118.70 paid directly to the secured creditor by the Debtor directly in the amount of via trial loan modification payments (April 2021-September 2021) . Funds held in escrow will be turned over to the creditor or the trustee pending further instruction. | $7200.00 | 1.        **Initial Ch 13  Plan** **Date Plan Filed:** 03/15/2019 **Date of Plan:** 03/15/2019 **Ecf Dkt No:** 11 **Plan Section 3.2 Maintenance of payments and cure of default if any:** **Secured Creditor &Property Description:** (Disputed)HSBC **Payment Amount:** $2400.00 **Payment Timing:** Monthly **Address Where Post Petition Payments Will be Sent:** See varying Provision **8.6 Additional Non-Standard Provisions** 1) RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate Protection The first mortgage on Debtor's property located at 5 Fosse Ct., Airmont, NY, Rockland County, is claimed by HSBC |

| | | | | | Bank and is disputed as to both the amount claimed and the identity of the real party in interest. Said property is not the Debtor's primary residence. Post-petition monthly payments in the amount of $2400.00 shall be held in escrow with the Debtors' attorney, pending determination as to the identity of the real party in interest and amount owed (if any) on the secured portion of the first mortgage lien. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, said funds shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan. The Debtor has identified the potential mortgage claims as "disputed" in his schedules.<br>2.    **First Amended Ch 13  Plan**<br>**Date Plan Filed:** 07/15/2021<br>**Date of Plan:** 07/14/2021<br>**Ecf Dkt No:** 70<br>**Plan Section 3.2 Maintenance of payments and cure of default if any:**<br>**Secured Creditor &Property Description:** |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| | | | | | HSBC Bank USA, NA re 5 Fosse Court, Ramapo, NY 10952<br>**Payment Amount:**$3686.45<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>Per contract |
| Sarah Frankel<br>19-22281 | Active Confirmable | $27,720.00 | **$27,720.00 turned over to the creditor September 25, 2019** Debtor continues to pay the adequate protection directly to the creditor. In total the Debtor has paid the secured creditor approximately $83,160.00 in post petition adequate protection payments. Debtor's plan has always been a cram down on an investment property.<br>(see Case Summary with attached transcripts) | $0.00 | 1.     **Initial Ch 13  Plan**<br>**Date Plan Filed:** 03/5/2019<br>**Date of Plan:** 03/5/2019<br>**Ecf Dkt No:** 8<br>**Plan Section 3.2 Maintenance of payments and cure of default if any:**<br>**Secured Creditor &Property Description:**<br>Wells Fargo Bank, NA<br>**Payment Amount:** $3956.00<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>See varying Provision<br>**8.6 Additional Non-Standard Provisions**<br>1) RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate<br>Protection The first mortgage on Debtor's property located at 7 Stonehouse Dr Spring Valley, NY 10977 Rockland County is<br>claimed by Wells Fargo Bank and is disputed as to both the<br>amount claimed and the identity of the real party in interest. |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | **Ecf Dkt No:** 55<br>**Plan Section 3.2 Maintenance of payments and cure of default**<br>**if any:**<br>None. |
| Malka Farkas<br>19-22520 | Case Dismissed per Voluntary Dismissal Order entered 07/30/2021 | $16,500.00 | **$16,500.00 turned over to the creditor on record,**<br>(Note: See case summary and transcripts; J Lane entered an order on 10/28/2019 memorializing what transpired at a hearing on 10/16/2019 including that all payments going forward would be made directly to the creditor.)<br>Debtor was to make payments directly to the mortgage servicer for the secured creditor, Caliber. Debtor paid at least Two (2) payments of $6600.00 each for total of $13,200.00.<br>Debtor's plan has always been a cram down on an investment property.<br>(see Case Summary with attached  transcripts) | $0.00 | 1.        **Initial Ch 13  Plan**<br>**Date Plan Filed:** 03/26/2019<br>**Date of Plan:** 03/26/2019<br>**Ecf Dkt No:** 10<br>**Plan Section 3.2 Maintenance of payments and cure of default**<br>**if any:**<br>**Secured Creditor &Property Description:**<br> Caliber Loan Servicing re: 96 College Road, Monsey, NY<br>**Payment Amount:** $3300.00<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>See varying Provision<br>**8.6 Additional Non-Standard Provisions**<br>1) RE: Post Petition Mortgage Payments Sec. 3.2(a) and Adequate Protection The first mortgage on Debtor's investment property<br>located at 96 College Road, Monsey, NY in Rockland County is<br>claimed by Caliber Home Loans and is disputed as to both the<br>amount claimed and the identity of the real party in interest.<br>Said property is not the Debtor's primary residence. Until such |

| | | | | | time as th parties can resolve the issue of amount owed and identity of the real party in interest, post petition monthly payments in the amount of $3300.00 shall be held in escrow with the Debtor's attorney, pending determination as to the identity of the real party in interest and amount owed (if any) on the secured portion of the first mortgage lien. Thereafter the Debtor shall file a motion to bifurcate the debt and pay the secured portion of the debt in full over the life of the plan. The sums set aside in attorney escrow are designated for the purpose of paying the secured portion of the claim and will be turned over to the correct party in due course. In the event the escrowed funds are not claimed as adequate protection or otherwise paid to the judicially determined or stipulated secured creditor, said funds shall be turned over to the Chapter 13 Trustee as additional disposable income to further fund the Debtor's plan. The Debtor has identified the potential mortgage claims as "disputed" in her schedules. |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Blossom Joyce Consign 19-23034 | Active Confirmable plan providing a 100% payout to priority and unsecured creditors | $0.00 (no provision in any plan to escrow funds) | Not Applicable | $0.00 | **1.    Initial Ch 13  Plan**<br>**Date Plan Filed:** 08/06/2019<br>**Date of Plan:** 08/06/2019<br>**Ecf Dkt No:** 24<br>**Plan Section 3.2 Maintenance of payments and cure of default**<br>**if any:**<br>**Secured Creditor &Property Description:**<br> SN Mortgage Servicing Corp<br>**Payment Amount:** $3910.16<br>**Payment Timing:** Monthly<br>**Address Where Post Petition Payments Will be Sent:**<br>Per Doc#2[10]<br><br><br>**2.    First Amended Ch 13 Plan**<br>**Date Plan Filed:** 11/04/2021<br>**Date of Plan:** 11/04/2021<br>**Ecf Dkt No:** 52<br>**Plan Section 3.2 Maintenance of payments and cure of default**<br>**if any:**<br>**Secured Creditor &Property Description:**<br> SN Mortgage Servicing Corp<br>**Payment Amount:** $3139.16<br>**Payment Timing:** Monthly |

---

[10] As per the instant Order to Show Cause there is a **typographical error** on the Debtor's first chapter 13 plan filed on 8/6/2019 (see Dkt No. 24) at Section 3.2(a) which reads, "address where post-petition payments will be sent: Per DOC #2". It should have read, "address where post-petition payments will be sent: Per POC #2". It is common knowledge among bankruptcy practitioners that "POC" stands for "Proof of Claim". The Proof of Claim Number 2 in this case is the mortgage claim pertaining to the Debtor's primary residence. The Debtor all times was to pay her monthly housing expense identified on her Schedule J, and again in the Chapter 13 Plan, directly to the creditor. This typo error of a "D" instead of a "P" was inadvertent and went unnoticed until the Order to Show Cause; however, the plan was amended back on November 4, 2020 (see ECF Dkt No 52) SEVEN (7) months prior to the Order to Show Cause being issued in this case. The amended plan is not addressed in the pending Order to Show Cause and the language being scrutinized was never incorporated in this case.

30

**Address Where Post Petition Payments
Will be Sent:**
323 5th Street, Eureka, CA 95501

# TIRELLI DECLARATION

# EXHIBIT "B"

# In re Janice Desmond 18-23750
# Transcript Dated September 9, 2020

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| IN RE: | . | Case No.  18-23750-shl |
|  | . |  |
|  | . | Chapter 13 |
| JANICE K. DESMOND, | . |  |
|  | . | 300 Quarropas Street |
|  | . | White Plains, NY 10601 |
| Debtor. | . |  |
|  | . | Wednesday, September 9, 2020 |

. . . . . . . . . . . . . . .

TRANSCRIPT OF HSBC BANK USA, NATIONAL ASSOCIATION
OBJECTION TO CONFIRMATION OF THE CHAPTER 13 PLAN
(RELATED DOCUMENT(S) 12) [15];
DEBTOR'S MOTION TO APPROVE THE SALE OF PROPERTY [41];
CONFIRMATION OF THE CHAPTER 13 PLAN;
STATUS CONFERENCE FOR LOSS MITIGATION WITH CITIZENS BANK, NA,
ON LOAN ENDING IN 8429 [13];
THIS COURT'S ORDER DIRECTING FUTURE FILING PROCEDURES FOR THIS
CHAPTER 13 CASE [34];
HSBC BANK USA, NATIONAL ASSOCIATION'S MOTION FOR RELIEF
FROM THE AUTOMATIC STAY REGARDING: 50 ROBERTSON DR.,
PEARL RIVER, NY 10965-1409 [40]
BEFORE THE HONORABLE SEAN H. LANE (VIA TELECONFERENCE)
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Tirelli Law Group<br>By:  LINDA TIRELLI, ESQ.<br>50 Main Street<br>White Plains, NY 10601<br>(914) 732-3222 |
| For HSBC Bank USA: | RAS Boriskin, LLC<br>By:  RAQUEL FELIX, ESQ.<br>900 Merchants Concourse<br>Westbury, NY 11590<br>(516) 280-7675 |
| Audio Operator: | Courtroom ECRO Personnel |
| Transcription Company: | Access Transcripts, LLC<br>517 Dell Road<br>Landing, NJ  07850<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

TELEPHONIC APPEARANCES (Continued):

For the Chapter 13          Office of the Chapter 13 Trustee
Trustee:                    By:  KRISTA M. PREUSS, ESQ.
                            399 Knollwood Road, Suite 102
                            White Plains, NY 10603-1936
                            (914) 328-6333

3

1    (Proceedings commence)

2         MS. PREUSS:  18-23750, Janice Desmond.

3         MS. TIRELLI:  Good afternoon, Your Honor.  Linda

4    Tirelli on behalf of the debtor, Janice Desmond.

5         THE COURT:  Good afternoon.  So I think there's --

6         MS. TIRELLI:  Your Honor --

7         THE COURT:  -- a sale motion on for today?

8         MS. TIRELLI:  Yes, Your Honor, we do.  We have a sale

9    motion on.  My client is selling her primary residence.  I've

10   not received any objections to the sale, and I believe it pays

11   off the secured creditor in full, and it does give her her

12   money back for her homestead exemption.  So I didn't see any

13   objections from anyone, Your Honor.

14        THE COURT:  All right.  Anybody wish to be heard on

15   this motion?

16        MS. PREUSS:  Your Honor, I have no objection.  I just

17   ask that counsel for the debtor circulate the order before it's

18   submitted since there wasn't one filed with the motion.

19        MS. TIRELLI:  Absolutely.  That's not a problem, Your

20   Honor.  We can do that.

21        THE COURT:  All right, great.

22        All right.  The motion for the sale is granted as to

23   26 Poplar Street in Nanuet.  And is there anything else that's

24   on for today?  Where does that leave us?

25        MS. FELIX:  Yes.  There's a motion for relief on 50

4

1   Robertson Drive in Pearl River.  This is Raquel Felix, RAS

2   Boriskin, attorneys for HSBC Bank.

3           MS. TIRELLI:  Yes, Your Honor.  Linda Tirelli still

4   for the debtor.

5           I did speak with the debtor, and, you know, like all

6   my clients, I want them to set the money aside for, you know,

7   for the post-petition payments.  In this particular case, it

8   was not done, so I don't have a defense for the nonpayment of

9   post-petitions, Your Honor, (indiscernible).

10          THE COURT:  All right.  So that motion is granted.

11          So with those, would it make sense to set this for

12  November 18th for confirmation?

13          MS. TIRELLI:  I would think so, Your Honor.

14          MS. PREUSS:  Thank you, Your Honor.  Yes.

15          THE COURT:  All right, thank you.  Let's do that.

16      (Proceedings concluded)

17                          *  *  *  *  *

18

19

20

21

22

23

24

25

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

5

1                          **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter, and to the best of my ability.

7

8

9

10   _Alicia F. Jarrett_

11   ALICIA JARRETT, AAERT NO. 428      DATE:   July 27, 2021

12   ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

# TIRELLI DECLARATION

# EXHIBIT "C"

# In re David Daniel Akerib

# and Vivian Naomi Akerib 19-22276

# Transcript Dated August 28, 2019

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE:

DAVID DANIEL AKERIB and
VIVIAN NAOMI AKERIB,

        Debtors.

. . . . . . . . . . . . . . .

       •   Case No.  19-22276-shl
       •
       •   Chapter 11
       •
       •   330 Quaroopas Street
       •   White Plains, NY 10601
       •
       •   Wednesday, August 28, 2019
       •   11:30 a.m.

TRANSCRIPT OF LOSS MITIGATION WITH HSBC BANK USA NA, WITH
RESPECT TO 5 FOSSE COURT, RAMAPO, NEW YORK 10952-4533;
LOAN ENDING 0063 [11]
**BEFORE THE HONORABLE SEAN H. LANE**
**UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:        Tirelli Law Group, LLC
                    By:  LINDA M. TIRELLI, ESQ.
                    50 Main Street, Suite 1265
                    White Plains, NY 10606
                    (914) 732-3222

For HSBC Bank:        Turofsky Law
                    By:  DEBORAH TUROFSKY, ESQ.
                    31 Arrandale Ave
                    Great Neck, NY 11024
                    (516) 606-2486

                    Gross Polowy, LLC
                    By:  RICHARD FAY, ESQ.
                    1775 Wehrle Drive
                    Williamsville, NY  14221

Audio Operator:       Court ECR Personnel

Transcription Company:  Access Transcripts, LLC
                    10110 Youngwood Lane
                    Fishers, IN 46038
                    (855) 873-2223
                    www.accesstranscripts.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

1        (Proceedings commence at 11:30 a.m.)

2                THE CLERK:  Akerib.

3                THE COURT:  Akerib?  Is that correct?

4                THE CLERK:  Yes.  19-22276, David Akerib and Vivian

5    Akerib.

6                MS. TIRELLI:  Your Honor --

7                UNIDENTIFIED:  19-22276, David Akerib.

8                UNIDENTIFIED:  I'm sorry, Your Honor.  I just have to

9    get my documents.

10               THE COURT:  No worries.

11               MS. TUROFSKY:  All right.  Deborah Turofsky, with

12   Gross Polowy, appearing on behalf of the secured creditor, HSBC

13   Bank.

14               MS. TIRELLI:  Good morning, Your Honor.  Linda

15   Tirelli on behalf of the debtors, Mr. and Mrs. Akerib.

16               This is a case, Your Honor, where, in the course of

17   this bankruptcy, apparently an appeal went through in the state

18   court.  I guess the foreclosure now has been returned.  And so,

19   you know, everyone's best interest right now is to try to

20   resolve this, and I think we're in the correct place to do it.

21               The last time we were here, my understanding on 6/26

22   was that opposing counsel said she needed clarification on some

23   documents.  What I got was a request on July 8th asking for my

24   client's 2011 tax returns.  That took a little digging, but we

25   did turn over what we had on the 8th of August.  And then on

3

1  the 21st of August, I was asked for basically almost a whole

2  new packet.  They wanted it to be re-signed, re-dated, updated

3  financials by pay stubs, bank statements --

4          THE COURT:  Yeah, we're not going to do that.

5          MS. TIRELLI:  -- a new letter of contribution.  Your

6  Honor, it's just -- there's a lot of time and effort in this

7  case.

8          THE COURT:  So I think people understand if you ask

9  for 2011 tax returns for whatever reason.  Frankly, I don't

10 need to know, so I'll stay out of that.

11         MS. TIRELLI:  Right.

12         THE COURT:  But and if it's done reasonably promptly,

13 it's in everyone's interest to not go backwards.  So I don't

14 want to have a whole new package based on that.  So what is it

15 that you still need for HSBC?

16         MS. TUROFSKY:  Your Honor, I have reached out to my

17 client and I have asked them what they need.  So they are

18 asking for updated information in continuity of their file.  So

19 they are asking for updated pay stubs for the borrower.  The

20 last one that they have received is June 27th, I'll just say

21 for the record, and we'll take your lead, Your Honor.  Whatever

22 you advise.  Updated pay stubs for the contributor.  The last

23 one they have is June 15.  Updated bank statements for a couple

24 of bank statements.  And just the re-signed contribution letter

25 with an updated date.

4

1         They just asked me for the information in

2 reference -- the documents for continuity for their files.  But

3 we will take direction from the Court and advise our clients.

4         THE COURT:  Okay.  You can tell them we're not doing

5 that.  I don't know what "continuity for files" means.  I

6 suspect it means you want to have the most updated things.

7         MS. TUROFSKY:  Updated, yes.

8         THE COURT:  But we're talking about things that were

9 submitted in June and then they were asked for tax returns and

10 they were given in early August.  I'm not going to require

11 people to re-sign and re-date things.  And I think if they

12 follow the counsel that you give them, they will do quite well,

13 and we'll get where we need to go.

14         MS. TUROFSKY:  Yes, Your Honor.

15         THE COURT:  So you can certainly pass that along.

16         MS. TUROFSKY:  Absolutely.

17         THE COURT:  You know what you're doing.

18         And so, again, it sounds like you're awfully close

19 and it's in everybody's best interest to see this process to

20 conclusion.  So we're going to make that happen.

21         MR. FAY:  Your Honor, a list we handed over to

22 debtor's counsel is relatively minor, Judge, but $2,400 is

23 being held in escrow, and I'm concerned about that, especially

24 when we have $74,000 in unsecured creditors.  Right now, it's

25 $1,000 a month for a total of 60,000 for the plan.  And the

5

1  plan will be amended in the future, Judge, but this is one of

2  those older cases where that was the practice.  Hopefully, that

3  will be amended and the trustee will get the disposable income.

4        THE COURT:  All right.  Well, we'll hope to get this

5  done first, and then --

6        MS. TIRELLI:  Correct.

7        THE COURT:  -- we'll -- and it's a 2019 case, right?

8        MR. FAY:  Yes, Your Honor.

9        THE COURT:  So, all right.

10       MS. TIRELLI:  Correct.

11       MR. FAY:  It's February 2019.

12       THE COURT:  All right.  So I trust that we'll get an

13  answer with the HSBC situation soon and then right after that,

14  we'll address the issues you can raise.

15       MR. FAY:  Your Honor, I just want to be clear, Your

16  Honor, as to what the Court's view is.  I thought we had an

17  understanding that this $2,400 - the practice of holding monies

18  in escrow for post-petition payments --

19       THE COURT:  Oh, I'm -- yeah.  No, we shouldn't do

20  that unless there's actually been something filed that calls

21  into question the validity of the actual noteholder.  And so if

22  there's an adversary, there's a claim objection, but as a

23  general practice, no, we -- that should -- that money should

24  come out of escrow.

25       MR. FAY:  I'll wait for that amendment, Judge.

6

1    MS. TIRELLI:  Well, Your Honor, if I may.  The last

2  time that I think that this brought up with the Court, the

3  Court did recognize that there's a lot of pieces out there that

4  would, you know, require --

5    THE COURT:  Yeah, no.  I'm not casting any

6  aspersions.

7    MS. TIRELLI:  -- and I can't change everything.

8    THE COURT:  You're catching up and --

9    MS. TIRELLI:  Right.  I'm catching up.  And the fact

10  that the foreclosure was overturned on appeal I think gives us

11  plenty of reason, but I can't file any litigation because we're

12  in loss mit.  So the money is safe.  It is in escrow.  I can

13  certainly give the trustee an accounting.  And it's either

14  going to go to help maybe put a down payment towards this, you

15  know, loss mit.  I'm sure the bank would appreciate not having

16  a 10-percent haircut.  Or, if not, it will be turned over to

17  the trustee.

18    THE COURT:  Well, also at this point, it --

19    MS. TIRELLI:  It says that in the plan.

20    THE COURT:  -- the money would otherwise go to the

21  secured creditors is my understanding.

22    MR. FAY:  That's correct, Judge.

23    THE COURT:  And they're in the middle of trying to

24  work things out.  So in this particular case, I don't want to

25  raise the degree of difficulty any more than it currently is.

19-23034-shl   Doc 82-1   Filed 09/24/21   Entered 09/24/21 17:44:11   Declaration
of Linda M. Tirelli with exhibits   Pg 57 of 83

7

1   So we'll put in a pin in that for the next time we get

2   together.  All right.

3         MS. TIRELLI:  Okay.  Thank you, very much, Your

4   Honor.  And when --

5         THE COURT:  All right.  So date 11/6?

6         MS. TUROFSKY:  11/20?

7         THE COURT:  11/20?

8         MS. TIRELLI:  11/20, maybe?

9         THE COURT:  All right.  11/20 it is.

10        MR. FAY:  11/20.  Thank you, Judge.

11        THE COURT:  Thank you.

12        MS. TIRELLI:  Thank you, very much, Your Honor.

13        MS. TUROFSKY:  Thank you, Your Honor.

14    (Concluded at 11:35 a.m.)

15                    *  *  *  *  *

16

17

18

19

20

21

22

23

24

8

1                    **C E R T I F I C A T I O N**

2          I, Karen K. Watson, court-approved transcriber,

3    hereby certify that the foregoing is a correct transcript from

4    the official electronic sound recording of the proceedings in

5    the above-entitled matter, and to the best of my ability.

6

7

8    _____

9    KAREN WATSON, AAERT NO. 1039     DATE:   October 7, 2019

10   ACCESS TRANSCRIPTS, LLC

11

12

13

14

15                   **C E R T I F I C A T I O N**

16

17          I, Lisa Luciano, court-approved transcriber, hereby

18   certify that the foregoing is a correct transcript from the

19   official electronic sound recording of the proceedings in the

20   above-entitled matter, and to the best of my ability.

21

22

23   _____

24   LISA LUCIANO, AAERT NO. 327     DATE:   October 3, 2019

25   ACCESS TRANSCRIPTS, LLC

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

# TIRELLI DECLARATION

# EXHIBIT "D"

# In re Sarah Frankel 19-22281

# Transcript Dated September 25, 2019

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

1

2    In re:                                    Case No. 19-22281-shl
                                             White Plains, New York
3        SARAH FRANKEL,                       September 25, 2019
                                Debtor.       11:00 a.m. to 11:07 a.m.

4

5        19-22281-SHL - SARAH FRANKEL - CHAPTER 13

6    OBJECTION TO CONFIRMATION OF PLAN AS TO THE PROPERTY
     LOCATED AT 7 STONEHOUSE ROAD, SPRING VALLEY, NEW YORK 10977-3340
                        (RELATED DOC 8)
7
                     CONFIRMATION HEARING

8
                    - A P P E A R A N C E S -
9
             Continued appearance by Chapter 13 Trustee
10   For the Debtor:                  LINDA TIRELLI, ESQ.
                                      Tirelli Law Group
11                                    Westchester Financial Center
                                      50 Main Street, Suite 405
12                                    White Plains, New York 10601
                                      (914) 732-3222; (914) 517-2696 fax
13                                    LTirelli@TW-LawGroup.com

14
     For Specialized Loan            PHILLIP A. RAYMOND, ESQ.
15   Servicing:                      McCalla Raymer Leibert Pierce LLC
                                     485 Route 1 South
16                                   Building F, Suite 300
                                     Iselin, New Jersey 08830
17                                   (732) 692-6872
                                     phillip.raymond@mccalla.com
18
     Transcriber:                    AA EXPRESS TRANSCRIPTS
19                                   195 Willoughby Avenue, Suite 1514
                                     Brooklyn, New York 11205
20                                   (888) 456-9716
                                     aaexpress@court-transcripts.net
21
               (Proceedings recorded by electronic sound recording)
22

23

24

25

Sarah Frankel - 9/25/19                                    2

1        CHAPTER-13 TRUSTEE:  19-22281, Sarah Frankel.

2        THE COURT:  All right.  I understand if I was reading

3   things properly that the trustee filed a motion to dismiss, and

4   I understand it was not contested, but maybe I'm wrong about

5   that.

6        MS. TIRELLI:  I'm sorry, the motion to dismiss?

7        THE COURT:  I wasn't sure if it was contested.  Maybe

8   that just means that nothing had been filed and in opposition.

9        MS. TIRELLI:  I believe that we've addressed

10  everything the trustee requested.  She wanted an affidavit of

11  contribution.

12       CHAPTER-13 TRUSTEE:  Except for the tax return.

13       MS. TIRELLI:  The tax return, Your Honor, we sent over

14  a copy of the 2018 tax extension to the trustee on 8/2.  So,

15  she's on extension, which is perfectly legitimate with the IRS.

16  So, as soon as it's filed, we'll be more than happy to give a

17  copy of the actual return --

18       THE COURT:  Okay.

19       MS. TIRELLI:  -- to the trustee.

20       CHAPTER-13 TRUSTEE:   And in two weeks, hopefully,

21  we'll get it, because that's when it's due, and it just slows

22  down the process.

23       THE COURT:  All right.  So, I see your clients are

24  there.  Good morning.  Thank you for being here and let me get

25  the appearance from the gentleman to their left.

Sarah Frankel - 9/25/19                                    3

1          MR. RAYMOND:  Phillip Raymond of McCalla Raymer

2    Leibert Pierce on behalf of Specialized Loan Servicing.

3          THE COURT:  All right.  I think we also have the

4    amended motion by the claims to reclassify the claims of Wells

5    Fargo, Proof of Claim 5.

6          MS. TIRELLI:  Yes, Your Honor.  I did receive a copy

7    of the objection which did not include an evaluation from

8    opposing counsel.  I've reached out to another attorney at the

9    firm, not the gentleman who's here today, and it's my

10   understanding that the bank did send on September 17 somebody

11   over to my client's property to do a valuation.  So, my clients

12   did in fact allow this gentleman into this investment property.

13   He did whatever he did.  We don't have a copy of the report yet.

14   My understanding as of last night was that counsel was not even

15   aware that the appraiser was sent over, but we can hash that

16   out.  I think it's going to come down to a question of

17   valuation.

18          I also want to address in the objection, my client,

19   who does have in my escrow as set out in their plan payment of

20   $3,960 a month for the post-petition payments, which are going

21   to be applied towards the cramdown.  I do have an escrow check

22   with me today.  Counsel said that he doesn't want to take it

23   because he's working.  He prefers that I mail it in.  But I am

24   here on record saying that I'm sending it.  It's a total of

25   $23,760, which is six payments of $3,960.  And going forward, my

Sarah Frankel - 9/25/19                                          4

1  client will pay that amount directly to the bank.

2        CHAPTER-13 TRUSTEE:  And, Your Honor, the trustee

3  objects to that because in the bankruptcy if we're cramming down

4  a loan, it would be paid through the plan, through my office.

5  So, I don't understand how we're skirting around that.  The Code

6  says that I get all the disposable income, and then I'm supposed

7  to pay the plan.  That's the whole purpose of why we're here.

8  Also --

9        THE COURT:  Does plan provide for direct pay?

10       MS. TIRELLI:  Yes, it does, Your Honor.  The plan

11 actually provides that any adequate protection payments made by

12 the debtor are going to be credited towards the cramdown.  It's

13 in our standard plan.

14       CHAPTER-13 TRUSTEE:  This is not adequate protection

15 what we're talking about going forward.  Going forward, we're

16 cramming down the claim to a value and that should be paid

17 through the plan.

18       THE COURT:  Well, I've certainly see that, and I don't

19 think we've had any disputes about direct payments to creditors'

20 first petition.  I think it's in a lot of plans.  I don't think

21 it's in all plans, but it's in some plans.  So, are we talking

22 about that, but am I missing something?

23       MS. TIRELLI:  Your Honor, my client will make payment

24 directly to the creditor.  And like I said, I have an escrow

25 check to pay the creditors today --

Sarah Frankel - 9/25/19                                    5

1           THE COURT:  And I think the --

2           MS. TIRELLI:  -- and it is adequate protection.

3           THE COURT:  I think the wrinkle here is that the money

4   was in escrow because it used to be a provision of a plan.  And

5   we've had the conversation, as I said, if there's an adversary

6   pending or a claim objection pending, escrow is one thing, but

7   otherwise it should paid to the creditor consistent with the

8   requirement to make post-petition payments.

9           MS. TIRELLI:  The issue here, Your Honor, was that we

10  were trying to get a prover valuation to file a motion, which

11  we've done.  I've done everything that we said we were going to

12  do.  We're only six months in and I think that I've moved this

13  case along.  My client will be making the payment directly to

14  the creditor going forward.  And, as I read the standard plan,

15  that is permissible.  I'm more than happy to sit down and review

16  it with the trustee, but I would imagine the creditor wants to

17  get paid now consistently each month instead of through the

18  trustee, which I don't know how that would work.  They would

19  have to probably wait till the plan is confirmed at that point.

20  But I'm open to having a discussions.  I wasn't aware this was

21  an issue for the trustee.

22          THE COURT:  All right.  Why don't you have that

23  discussion.  So, I think there were a bunch of objections raised

24  in the by Specialized Loan Servicing, and I think the one

25  evaluation, you're working.  I think the other ones, I wasn't

Sarah Frankel - 9/25/19                                    6

1   quite sure.  There was some reference about serving a legitimate

2   purpose in the bankruptcy proceeding necessary for the successor

3   organization.  But there weren't really any cites to anything

4   that would support that.  And I'm not aware of anything that

5   would require the debtor to make the kinds of showing that were

6   identified in those objections.  The valuation thing is

7   something else and we're working on that, and so it sounds like

8   it makes sense to carry this.

9           MR. RAYMOND:  Your Honor, may I just address the

10  court?  There's some legitimate concerns here.  The cramdown

11  amount is $398,000, all right?  So, may estimate is about

12  $6,633.83 a month will need to be paid just to pay off this loan

13  within five years.  The debtor's schedule shows disposable

14  income of $1,000.  That disposable income should actually be

15  reduced in net negative, because it doesn't include the payments

16  that are going out to my client in the amount of $3,960.

17          THE COURT:  Well, that is a confirmation issue.  So,

18  what I understand is that the motion to reclassify is really a

19  valuation issue.  So, what you're raising are plan concerns

20  which I think the trustee, and the debtor, and you all should

21  have a conversation about.

22          MR. RAYMOND:  And then finally to that point, Ms.

23  Tirelli's originally plan needs to be amended to address the

24  entire claim that is going to be --

25          THE COURT:  Right.  But again, that's a confirmation

Sarah Frankel - 9/25/19                                          7

1   issue.  So, I understand that.  It sounds like valuation is the

2   first step.

3           MS. TIRELLI:  Yes, Your Honor.

4           THE COURT:  And then we'll need to talk about

5   confirmation issues, unless somebody's raised an argument that

6   says that you can't do them in that order in this particular

7   case for whatever reason and then you can let me know.  But it

8   sounds like you certainly need to know what the values are.  So,

9   do you want a date in November, or do you want October 30?

10          MS. TIRELLI:  Well, my side is certainly prepared for

11  November.  I know that the appraiser or whoever is doing the

12  valuation was there on September 17.  I don't know how long it

13  takes to generate a report.  Counsel did suggest that they

14  really want to get someone else to do the report.

15          THE COURT:  All right.  Well, it's less than a week.

16  I'm not going to give them a hard time.

17          MR. RAYMOND:  Your Honor, to Ms. Tirelli also, we're

18  not aware of this.  We've been trying to find out what happened,

19  that it was a broker's price opinion, not an appraisal.

20          THE COURT:  All right.  So, I'm going to give you

21  November 6.  And what I would suggest is that you need to have a

22  conversation soon about where you are in the process, so that

23  you all can spend the time efficiently and figure out what needs

24  to be done, and what's already been done, etcetera.  All right.

25          MS. TIRELLI:  Yes.  And then Your Honor just one other

Sarah Frankel - 9/25/19                                    8

1  point, I just want to go on record, I did provide over to

2  opposing counsel a copy of a tax bill that remains open, and I

3  believe that there was an email that was sent while I was

4  sitting here today.  I have not had a chance to read it.

5  Stating that they're confirming the -- I guess the creditor has

6  paid the tax bill.  So, I just want to see something from them

7  verifying that that's been done.  And then, obviously, we'll

8  have to work it out, if my client should be paying the tax bill

9  going forward.  But again, that's something we can work out.  I

10  just wanted to put it on the record that as of late last week,

11  his bills was outstanding.  It's about $5,700.  So, I don't want

12  to accrue all of the kind of penalties for not paying the

13  taxes.'

14          THE COURT:  All right.  Well, obviously, it's an

15  important conversation to have as well, so everybody is on the

16  same page.  All right.  November 6, it is.  Thank you. Have a

17  good day.

18                       - o0o -

19                    CERTIFICATION

20          I, Rochelle V. Grant, approved transcriber, certify

21  that the foregoing is a correct transcript from the official

22  electronic sound recording of the proceedings in this matter,

23  Case 19-22281-shl, held on 9/25/19.

24                                        *Rochelle V. Grant*

25                                        September 6, 2021

# TIRELLI DECLARATION

# EXHIBIT "E"

# In re John Kolkowski 19-22172
# Transcript Dated February 17, 2021

**In Re:**

*JOHN KOLKOWSKI*

*Main Case No. 19-22172-shl*

*February 17, 2021*

*eScribers, LLC*

*(973) 406-2250*

*operations@escribers.net*

*www.escribers.net*

*To purchase copies of this transcript, please contact us by phone or email*



1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

JOHN KOLKOWSKI,                          Main Case No.

       Debtor.                          19-22172-shl

- - - - - - - - - - - - - - - - - - - - -x

          United States Bankruptcy Court

          300 Quarropas Street

          White Plains, New York

          February 17, 2021

          10:00 AM

B E F O R E:

HON. SEAN H. LANE

U.S. BANKRUPTCY JUDGE

2

1

2  Doc.#16; Debtor's Motion To Void Lien, And Motion For Damages

3  For Creditor Misconduct, And Motion To Disallow Claims, And

4  Motion To Expunge Claims

5

6  Doc.#26; Nationstar Mortgage LLC's Response To Debtor's Motion

7  Objecting To Claim No. 5 (related document(s)16).

8

9  Doc.#24; Debtor's Amended Motion To Void Lien, Motion For

10  Damages For Creditor Misconduct, Motion To Disallow Claims,

11  Motion To Expunge Claims (Amends Part 2 to Dkt No 16 (To

12  Correct Misstatements On Pages 13 And 14) And Amendment To Part

13  5 The Amended Document Is The Dually Executed 2011 Loan Mod

14  Agreement). (related document(s)20).

15

16  Doc.#25; Nationstar Mortgage LLC's Reply To Debtor's Objection

17  To Motion For Relief From The Automatic Stay (related

18  document(s)20).

19

20  Doc.#20; Nationstar Mortgage LLC's Motion For Relief From The

21  Automatic Stay Regarding: 39 Dunwoodie St., Yonkers, NY 10704.

22

23  Doc.#23; Debtor's Objection To Motion For Relief From The

24  Automatic Stay And Request For An Evidentiary Hearing.

25

3

1

2  Confirmation Of The Chapter 13 Plan.

3

4  Doc.#27; This Court's Order Directing Future Filing Procedures

5  For This Chapter 13 Case.

6

7  Doc.#32; This Court's Order Directing Future Filing Procedures

8  For This Chapter 13 Case.

9

10

11

12

13

14

15

16

17

18

19

20  Transcribed by:  River Wolfe

21  eScribers, LLC

22  352 Seventh Avenue, Suite #604

23  New York, NY 10001

24  (973)406-2250

25  operations@escribers.net

4

1

2  A P P E A R A N C E S (All present by video or telephone):

3  TIRELLI LAW GROUP, LLC

4         Attorneys for Debtor

5         50 Main Street, Suite 1265

6         White Plains, NY 10606

7

8  BY:   VICTORIA LEHNING, ESQ.

9

10

11  BERKMAN, HENOCH, PETERSON, PEDDY & FENCHEL, P.C.

12         Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper

13         100 Garden City Plaza

14         Garden City, NY 11530

15

16  BY:   RANDY J. SCHAEFER, ESQ.

17

18

19  OFFICE OF THE CHAPTER 13 TRUSTEE, KRISTA PREUSS

20         Attorneys for Krista Preuss, Chapter 13 Trustee

21         399 Knollwood Road, Suite 102

22         White Plains, NY 10603

23

24  BY:  DENNIS JOSE, ESQ.

25

JOHN KOLKOWSKI                                    5

1                    P R O C E E D I N G S

2            THE CLERK:  19-22172, John Kolkowski.

3            MS. LEHNING:  Good morning, Your Honor.  Victoria

4     Lehning with Tirelli Law Group for the debtor, Mr. Kolkowski.

5            MS. SCHAEFER:  Good morning, Your Honor. Randy

6     Schaefer for Nationstar Mortgage.

7            MS. LEHNING:  Victoria Lehning --

8            THE COURT:  All right.

9            MS. LEHNING:  -- for the debtor, Your Honor.  This is

10    a matter where we just recently entered loss mitigation.  We

11    received the packet from the creditor.  We actually haven't

12    gotten the order signed yet, but we are going ahead anyway.

13            And I'm pleased to report that the debtor slipped just

14    about what looks like everything I'm going to need to complete

15    that packet under my door this morning.  It was waiting for me

16    when I got in.  So I should be able to turn that around to the

17    creditor by the end of the week.

18            THE COURT:  All right.  Great.  And let me just ask

19    you a general question.  It came up in the context of another

20    case that's going to get called later, but I did see that, in

21    another case, there were a couple of status letters, and one

22    mentioned Ms. Tirelli's medical situation, and for that case, I

23    sort of had -- it was late enough in the day that it wasn't

24    really an option to push it off, but I certainly don't want to

25    put somebody in an awkward spot if they're working through

JOHN KOLKOWSKI                                              6

1  medical issues.

2          So one of them had mentioned sort of four to six

3  weeks; another one had mentioned sort of two months.  And I

4  don't know if you have any sort of general go by, or requests,

5  or anything, just because I want to make sure that we're

6  mindful of anybody's medical issues.  And if Ms. Tirelli's had

7  some issues that way, I want to be sensitive to that.  So I

8  don't know if you have any thoughts.

9          MS. LEHNING:  Victoria Lehning.  Thank you very much,

10  Your Honor.  That is greatly appreciated.  Yes, Ms. Tirelli did

11  have surgery, and she does anticipate starting to come back

12  part time next week.  But obviously, the floodgates are opening

13  in terms of not getting certain things out for six weeks.  So

14  we would appreciate the May date on this one.

15          THE COURT:  Okay.  Yeah.  That's fine.  That's fine.

16  And the other one, I think that I was -- I don't want to jump

17  ahead, but there was a Charmaine Brown case that really has a

18  lot of adversary work, and an adversary, and so that was the

19  one that made me think it was scheduled.  Then I realized that,

20  in light of what I had seen, the status reports, that there --

21  it might be difficult to get anything accomplished today.  And

22  that's fine; somebody has surgery.  So I just wanted to throw

23  it out there.

24          So we use the May 5th date for this, and thank you for

25  the additional information; just helps to get some context for

1  things going forward.

2          MR. JOSE:  Your Honor, if I may be --

3          MS. LEHNING:  Thank you very much --

4          MR. JOSE:  Your Honor --

5          THE COURT:  Um-hum.

6          MR. JOSE:  -- if I may be heard on this one.

7          THE COURT:  Um-hum.  Sure.

8          MR. JOSE:  Judge, in this particular case, we are fine

9  with the (indiscernible) trustee.  The issue that we have is,

10  the case was filed in February of 2019.  At the filing date,

11  Judge -- you see, initially, there was an attempt at the

12  dispute, or at least, presumably, an indication of a dispute,

13  against the mortgage lender -- and $2,707.91, as per Section

14  8.6 of the plan, was being held in escrow in the debtor's

15  counsel's escrow account.  That's for the plan proposed.

16          We've been asking repeatedly as to what the status of

17  any of those funds are.  To the extent are they seeking loss

18  mitigation right now, clearly, those funds are part of their

19  disposable income because they have been taking credit for

20  that.  And we would like that turned over.  And each and every

21  time, we have heard that --

22          THE COURT:  I --

23          MR. JOSE:  -- Ms. Tirelli is on medical leave -- and

24  this is going --

25          THE COURT:  Let me interrupt you.  I have notes from

JOHN KOLKOWSKI                                              8

1  December saying -- the status report says that escrow of

2  adequate protection payments were turned over.  Trustee was

3  asking about that, and then Nationstar confirmed that they had

4  received those payments.  So that's why I --

5          MR. JOSE:  Okay.  So it's gone to Nationstar.  Got it.

6  Thank you, Judge.  Um-hum.

7      (Recess)

8          THE COURT:  We'll loop back to Mr. Kolkowski.  So it

9  sounds like there is loss mitigation that's being done, and

10 that's fine.  And so in light of that, let me ask counsel if a

11 May -- since that's sort of a recent event -- if the May 5th

12 date makes sense or you have another date in mind.

13         MS. LEHNING:  Victoria Lehning for the debtor.  I

14 believe we were suggesting the May 5th date, Your Honor.

15         THE COURT:  Okay.  Great.  All right.  We'll use that

16 date --

17         MR. JOSE:  May --

18         THE COURT:  -- and unless --

19         MR. JOSE:  Your Honor --

20         THE COURT:  -- anything else from the trustee?

21         MR. JOSE:  Judge, May 5th is fine for the trustee.  I

22 just have a question for the creditors' counsel.  Just want to

23 confirm that they have received adequate protection or escrowed

24 funds from debtor.  That's all I need to know at this point.

25         MS. SCHAEFER:  Good morning, Your Honor.  Randy

**JOHN KOLKOWSKI**                                                    9

1  Schaefer, for Nationstar Mortgage.  Yes, I've confirmed with my

2  client last night that the debtor continues to make post-

3  petition payments in the amount of 2,707 dollars.

4          MR. JOSE:  Thank you, Judge.

5          THE COURT:  All right.  Thank you very much,

6  everybody.

7      (Whereupon these proceedings were concluded)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19-23034-shl    Doc 82-1    Filed 09/24/21    Entered 09/24/21 17:44:11    Declaration
of Linda M. Tirelli with exhibits    Pg 81 of 83

10

## C E R T I F I C A T I O N

I, River Wolfe, certify that the foregoing transcript is a true
and accurate record of the proceedings.

_____

River Wolfe

eScribers

352 Seventh Ave., Suite #604

New York, NY 10001


Date:  August 28, 2021

**JOHN KOLKOWSKI**
**Main Case No. 19-22172-shl**

February 17, 2021

### $

**$2,707.91 (1)**
7:13

### A

**able (1)**
5:16
**accomplished (1)**
6:21
**account (1)**
7:15
**actually (1)**
5:11
**additional (1)**
6:25
**adequate (2)**
8:2,23
**adversary (2)**
6:18,18
**against (1)**
7:13
**ahead (2)**
5:12;6:17
**amount (1)**
9:3
**anticipate (1)**
6:11
**appreciate (1)**
6:14
**appreciated (1)**
6:10
**around (1)**
5:16
**attempt (1)**
7:11
**awkward (1)**
5:25

### B

**back (2)**
6:11;8:8
**Brown (1)**
6:17

### C

**called (1)**
5:20
**came (1)**
5:19
**case (6)**
5:20,21,22;6:17;
7:8,10
**certain (1)**
6:13
**certainly (1)**
5:24
**Charmaine (1)**
6:17

**clearly (1)**
7:18
**CLERK (1)**
5:2
**client (1)**
9:2
**complete (1)**
5:14
**concluded (1)**
9:7
**confirm (1)**
8:23
**confirmed (2)**
8:3;9:1
**context (2)**
5:19;6:25
**continues (1)**
9:2
**counsel (2)**
8:10,22
**counsel's (1)**
7:15
**couple (1)**
5:21
**COURT (12)**
5:8,18;6:15;7:5,7,
22,25;8:8,15,18,20;
9:5
**credit (1)**
7:19
**creditor (2)**
5:11,17
**creditors' (1)**
8:22

### D

**date (7)**
6:14,24;7:10;8:12,
12,14,16
**day (1)**
5:23
**debtor (6)**
5:4,9,13;8:13,24;
9:2
**debtor's (1)**
7:14
**December (1)**
8:1
**difficult (1)**
6:21
**disposable (1)**
7:19
**dispute (2)**
7:12,12
**dollars (1)**
9:3
**done (1)**
8:9
**door (1)**
5:15

### E

**else (1)**
8:20
**end (1)**
5:17
**enough (1)**
5:23
**entered (1)**
5:10
**escrow (3)**
7:14,15;8:1
**escrowed (1)**
8:23
**event (1)**
8:11
**everybody (1)**
9:6
**extent (1)**
7:17

### F

**February (1)**
7:10
**filed (1)**
7:10
**filing (1)**
7:10
**fine (6)**
6:15,15,22;7:8;
8:10,21
**floodgates (1)**
6:12
**forward (1)**
7:1
**four (1)**
6:2
**funds (3)**
7:17,18;8:24

### G

**general (2)**
5:19;6:4
**Good (3)**
5:3,5;8:25
**Great (2)**
5:18;8:15
**greatly (1)**
6:10
**Group (1)**
5:4

### H

**heard (2)**
7:6,21
**held (1)**
7:14
**helps (1)**
6:25

**Honor (9)**
5:3,5,9;6:10;7:2,4;
8:14,19,25

### I

**income (1)**
7:19
**indication (1)**
7:12
**indiscernible (1)**
7:9
**information (1)**
6:25
**initially (1)**
7:11
**interrupt (1)**
7:25
**issue (1)**
7:9
**issues (3)**
6:1,6,7

### J

**John (1)**
5:2
**JOSE (10)**
7:2,4,6,8,23;8:5,
17,19,21;9:4
**Judge (2)**
7:8,11;8:6,21;9:4
**jump (1)**
6:16

### K

**Kolkowski (3)**
5:2,4;8:8

### L

**last (1)**
9:2
**late (1)**
5:23
**later (1)**
5:20
**Law (1)**
5:4
**least (1)**
7:12
**leave (1)**
7:23
**LEHNING (10)**
5:3,4,7,7,9;6:9,9;
7:3;8:13,13
**lender (1)**
7:13
**letters (1)**
5:21
**light (2)**
6:20;8:10

**looks (1)**
5:14
**loop (1)**
8:8
**loss (3)**
5:10;7:17;8:9
**lot (1)**
6:18

### M

**makes (1)**
8:12
**matter (1)**
5:10
**May (9)**
6:14,24;7:2,6;
8:11,11,14,17,21
**medical (4)**
5:22;6:1,6;7:23
**mentioned (3)**
5:22;6:2,3
**might (1)**
6:21
**mind (1)**
8:12
**mindful (1)**
6:6
**mitigation (3)**
5:10;7:18;8:9
**months (1)**
6:3
**morning (4)**
5:3,5,15;8:25
**Mortgage (3)**
5:6;7:13;9:1
**much (3)**
6:9;7:3;9:5

### N

**Nationstar (4)**
5:6;8:3,5;9:1
**need (2)**
5:14;8:24
**next (1)**
6:12
**night (1)**
9:2
**notes (1)**
7:25

### O

**obviously (1)**
6:12
**off (1)**
5:24
**one (7)**
5:21;6:2,3,14,16,
19;7:6
**opening (1)**
6:12

19-23034-shl   Doc 82-1   Filed 09/24/21   Entered 09/24/21 17:44:11   Declaration
of Linda M. Tirelli with exhibits   Pg 83 of 83

**JOHN KOLKOWSKI**
Main Case No. 19-22172-shl                                    **February 17, 2021**

| | | | |
|---|---|---|---|
| option (1)<br>5:24 | 5:13;8:1<br>reports (1)<br>6:20 | 5:22;6:6<br>today (1)<br>6:21 | **8** |
| order (1)<br>5:12 | requests (1)<br>6:4 | trustee (4)<br>7:9;8:2,20,21 | 8.6 (1)<br>7:14 |
| out (2)<br>6:13,23 | right (5)<br>5:8,18;7:18;8:15; | turn (1)<br>5:16 | |
| over (2)<br>7:20;8:2 | 9:5 | turned (2)<br>7:20;8:2 | |
| | | two (1)<br>6:3 | |

| **P** | **S** | | |
|---|---|---|---|
| | saying (1)<br>8:1 | | **U** |
| packet (2)<br>5:11,15 | SCHAEFER (4)<br>5:5,6;8:25;9:1 | Um-hum (3)<br>7:5,7;8:6 | |
| part (2)<br>6:12;7:18 | scheduled (1)<br>6:19 | under (1)<br>5:15 | |
| particular (1)<br>7:8 | Section (1)<br>7:13 | unless (1)<br>8:18 | |
| payments (3)<br>8:2,4;9:3 | seeking (1)<br>7:17 | up (1)<br>5:19 | |
| per (1)<br>7:13 | sense (1)<br>8:12 | use (2)<br>6:24;8:15 | |
| petition (1)<br>9:3 | sensitive (1)<br>6:7 | | |
| plan (2)<br>7:14,15 | signed (1)<br>5:12 | **V** | |
| pleased (1)<br>5:13 | situation (1)<br>5:22 | Victoria (4)<br>5:3,7;6:9;8:13 | |
| point (1)<br>8:24 | six (2)<br>6:2,13 | | |
| post- (1)<br>9:2 | slipped (1)<br>5:13 | **W** | |
| presumably (1)<br>7:12 | somebody (2)<br>5:25;6:22 | waiting (1)<br>5:15 | |
| proceedings (1)<br>9:7 | sort (5)<br>5:23;6:2,3,4;8:11 | way (1)<br>6:7 | |
| proposed (1)<br>7:15 | sounds (1)<br>8:9 | week (2)<br>5:17;6:12 | |
| protection (2)<br>8:2,23 | spot (1)<br>5:25 | weeks (2)<br>6:3,13 | |
| push (1)<br>5:24 | starting (1)<br>6:11 | Whereupon (1)<br>9:7 | |
| put (1)<br>5:25 | status (4)<br>5:21;6:20;7:16;8:1 | work (1)<br>6:18 | |
| | suggesting (1)<br>8:14 | working (1)<br>5:25 | |
| **R** | sure (2)<br>6:5;7:7 | | |
| | surgery (2)<br>6:11,22 | **1** | |
| Randy (2)<br>5:5;8:25 | | 19-22172 (1)<br>5:2 | |
| realized (1)<br>6:19 | **T** | | |
| really (2)<br>5:24;6:17 | | **2** | |
| received (3)<br>5:11;8:4,23 | terms (1)<br>6:13 | 2,707 (1)<br>9:3 | |
| recent (1)<br>8:11 | thoughts (1)<br>6:8 | 2019 (1)<br>7:10 | |
| recently (1)<br>5:10 | throw (1)<br>6:22 | | |
| Recess (1)<br>8:7 | Tirelli (3)<br>5:4;6:10;7:23 | **5** | |
| repeatedly (1)<br>7:16 | Tirelli's (2) | 5th (4)<br>6:24;8:11,14,21 | |
| report (2) | | | |